LUNNING *v.* THE STATE.

May Term, 1857.

LUNNING
*v.*
THE STATE.

The failure of the defendant to except to the ruling of the Court below, will not render valid a conviction for a crime after the statute creating the crime has been repealed.

APPEAL from the *Posey* Court of Common Pleas.

*Monday, June 8.*

PERKINS, J.—Prosecution against *Lunning* for retailing to a minor. Motion to quash overruled. Conviction and fine. No exception was taken.

This Court has decided in numerous cases that the statute under which this prosecution was carried on had been repealed before the prosecution was commenced. And the question presented is—Will the failure of the defendant to except below, render valid a conviction for a crime after the statute creating the crime has been repealed? We answer unhesitatingly that it will not, for the following reasons:

1. The repeal of the statute creating the offense deprived the Court of jurisdiction over the act charged as an offense, and rendered it the duty of the Court *mero motu*, to dismiss the prosecution. Consent may confer jurisdiction over the person, but not over a subject-matter, at least, as a general rule.

2. The criminal code of practice expressly gives the motion in arrest of judgment. A motion in arrest would reach the objection under consideration. And it is well settled that an objection, good on a motion in arrest, is generally good on appeal or error.

3. Even in civil cases, the motion in arrest substantially exists under the new code. 2 R. S. p. 121, s. 372.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded to be dismissed (1).

*A. P. Hovey*, for the appellant.

(1) In two other cases against the appellant, the same order was this day made, for the same reasons.

May Term,
1857.

THE STATE
v.
THE BOARD
OF COMM'RS
OF RIPLEY
COUNTY.

Monday,
June 8.

THE STATE on the relation of the OHIO AND MISSISSIPPI RAILROAD COMPANY v. THE BOARD OF COMMISSIONERS OF RIPLEY COUNTY.

---

NOTE.—A majority of the Court do not join in Judge STUART's opinion. The case was decided on the point that there was no exception below. The principal conclusions reached by Judge STUART upon the facts stated above, are the following:

1. The notice was insufficient, the election invalid, and any action of the board of commissioners pursuant thereto, void.

2. But if the notice had been sufficient, and the election valid, there was no subscription of stock.

3. And if there had been a subscription, the county, not being in a position to compel the company to issue certificates of stock, could not be called upon to issue her bonds.

4. If the acts of the board amounted to a subscription, their acts being administrative merely, the question whether they had strictly complied with the statute might be examined directly or collaterally.

of stock for each of the counties which voted to take stock.
That minimum for *Ripley* county was 50,000 dollars.
Local Laws of 1849, *supra.* The amending act was ap-
proved *January* 15, 1849. The sheriff of *Ripley* county
gave notice of the election to be held on the first *Monday*
in *March*, by advertisement published in a newspaper on
the 15th and 22d of *February*, 1849. An election was ac-
cordingly held in the several precincts in *Ripley* county,
and a majority of all the votes cast, found to be in favor of
"subscription."

In *September* following, the board of commissioners was
called together by the auditor of *Ripley* county, to carry
out the purpose of the election. As the action of the board
of commissioners on that occasion presents the basis of the
most material question arising in the case, the record of
their proceedings is given entire.

"In the matter of the *Ohio and Mississippi Railroad
Company.* It is ordered by the board of commissioners of
the county of *Ripley*, that so soon as the city of *Cincinnati*
shall, in her corporate capacity, secure the issuing of her
bonds to the stockholders of said company, for any sum
not less than 600,000 dollars, and 200,000 dollars of other
additional stock be subscribed to the capital stock of said
company, by individuals or otherwise, to be expended upon
said road in and east of the county of *Ripley*, and west of
the said city of *Cincinnati*, then, and in that case, the bonds
of the said county of *Ripley* shall be issued to the capital
stock of the *Ohio and Mississippi Railroad Company*, for the
sum of 50,000 dollars, in accordance to and with the act
to amend an act incorporating the said company, approved
*January* 15, 1849. *Provided*, however, the said 50,000
dollars shall be expended in the said county of *Ripley*, in
the construction and completion of said road. But in case
the said 600,000 dollars, and 200,000 dollars, shall not be
subscribed as aforesaid, then, and in that case, the bonds of
the said county of *Ripley* shall not be issued."

In *November*, 1850, and in *June*, 1851, the board of com-
missioners met at *Versailles*, on the call of the auditor, and
appointed an agent to attend the meeting of the directors

May Term, 1857.

THE STATE
v.
THE BOARD
OF COMM'RS
OF RIPLEY
COUNTY.

of the *Ohio and Mississippi Railroad Company* at *Cincinnati*, and vote upon the stock of *Ripley* county. It is said in argument, that on the first occasion, he was permitted to vote, and on the second, he was excluded.

In 1853, the railroad company, by attorney, appeared before the commissioners and filed their petition, praying for the issuing of bonds, &c. This was at the *February* term, 1853. The matter was taken under advisement till the *June* term following, when an order was entered denying the prayer of the petition, and refusing to issue the bonds.

The petition further shows that the railroad company accepted the amendment to their charter of *January*, 1849; that with their petition to the board of commissioners, in *February*, 1853, they tendered to the board for execution, bonds of 1,000 dollars each, payable in twenty-five years, at the *North River* bank, in the city of *New York*, with six per cent. interest annually, payable at the same place, which the board of commissioners refused to execute.

The railroad company further aver, that before the filing of their petition, in *February*, 1853, before the county board, the company had expended in and east of *Ripley* county, in constructing the road and purchasing the right of way, more than 500,000 dollars, and were then employed in and east of the county, in the construction of the road—of all which the commissioners had notice.

This allegation seems intended to meet the condition precedent, which the order of the board of commissioners of *September*, 1849, exacted.

And the question is, should the mandate to issue the bonds under this state of facts, admitted by the demurrer, be made imperative?

Great stress was laid in argument, on the irregularity of the notice of election given by the sheriff. It is said that the act of *January* 15, 1849, in force from its passage, and requiring the sheriff to give the notice of election forthwith, was not complied with by a notice published *February* 15th and 22d, following. The words *immediately* and *forthwith* may be regarded as synonymous. In *Doe* v.

*Flagler*, 1 Ind. R, 542, this Court gave construction to the former word. The act there under consideration, required the auditor to make out, on the first day of *October* of each year, a list of delinquent lands, and to cause a copy of such list to be immediately published, &c. The publication was made on the 20th of *November* following. *Held*, that this was not publishing the list immediately, within the meaning of the act. Were this the only point in the case, we should hesitate to say that the publication in this instance was made forthwith. If the purpose of the notice of election was to call the attention of the people of *Ripley* county more particularly to the question, whether they should embark in railroad speculation, the notice given could not be regarded as sufficient. To permit two-thirds of the time, between the taking effect of the act and the election, to elapse before the sheriff made his proclamation, was not carrying out the plain intent of the legislature, as expressed in the word *forthwith*.

That the legislature regarded the notice as material, is plain from the act itself. For in a subsequent part of the second section, it is provided, that if in any of the counties there should be a failure to hold such election, by reason of want of notice or other cause, it is made the duty of the sheriff to order an election. This clearly shows that the legislature did not intend that the law itself should be notice to the people of *Ripley* county. It was intended that they should be notified by the sheriff of the county; and when it is said that the notice shall be given forthwith, it is equivalent to saying that there shall be from forty to forty-eight days' notice of the election. The first *Monday* in *March*, 1849, is not fixed absolutely as the only day on which the election can be held. But that day is designated as the earliest period on which it can be held; provided notice of such election be given forthwith. In case of failure, the sheriff may order an election at any other time.

If, in this instance, nothing had appeared in relation to the time of giving the notice, we might easily presume that it was properly given. Thus, in this very case, the law provides that the commissioners may determine the amount

<div style="margin">

May Term,
1857.

THE STATE
v.
THE BOARD
OF COMM'RS
OF RIPLEY
COUNTY.

</div>

May Term,
1857.

THE STATE
v.
THE BOARD
OF COMM'RS
OF RIPLEY
COUNTY.

above 50,000 dollars, upon which the vote shall be taken, and give notice thereof at the different election precincts. Nothing in relation to such notice appears in the record; but we will presume it was given, particularly, as 50,000 dollars was the minimum to be voted. Here, however, the notice given by the sheriff is before us. It is incumbent on the Court to say whether that notice is in conformity to the statute. There is no room to presume anything about it. In the language of this Court, in *Doe* v. *Flagler*, *supra*, *forthwith* means, as soon as such notice could reasonably be given; not when two-thirds of the time in which it could be given had elapsed.

It is true, the election is to be governed in all things by the law governing general elections. That is, the vote shall be taken by ballot; the inspector and judges shall conduct it; they shall determine the qualifications of voters, and it shall be held at the same place, and between the same hours, as a general election. But this does not embrace the time notice shall be given; for on that point, the legislature neither says 15 days' notice, nor leaves it to be implied; but on the 15th of *January* says, it shall be given then, forthwith, some forty-eight days before the election.

The notice given, then, was not the notice contemplated by the legislature. The voters and tax-payers of *Ripley* county cannot be charged with constructive notice, under this state of facts.

If it be said that an election was, in point of fact, held, the answer is a plain one. If it otherwise affirmatively appeared that the occasion called out a full vote, we might then, perhaps, be asked to presume that the people were fully advised of the election. But we are not at liberty to indulge this presumption. We are not to presume that an insufficient notice had done the office of a sufficient notice. Unless, therefore, we can, from the law itself, predicate constructive notice to the people of *Ripley* county, we cannot conclude that they had notice, or that they acted. The acts of a few persons, interested in the project, perhaps; or it may be, designedly concealing the fact of the election from the body of the people, whose property was to be put

into a losing speculation against their will, cannot be taken as binding. The commissioners of *Ripley* county had, in the exercise of their own discretion, declined to take stock, as was permitted them to do by the act. The people, in the exercise of the like discretion, had declined to vote in favor of taking stock, as was also permitted them by the same law. To force the issue, the railroad company procured the passage of the act of *January*, 1849. The legislature deemed it necessary to give the people of *Ripley* county at least forty days' notice, to deliberate upon the important proposition per force submitted to them. Far be it from the Courts to abridge the poor privilege thus accorded, by holding that it was immaterial whether they had timely notice, or any notice at all. The materiality of the notice is placed beyond doubt by the alternative provision, viz., that if, from any cause, there should be a failure to hold such election, the proper sheriff should order—give notice of—an election at some other time. (s. 2.) It is clear, therefore, that the notice of election to subscribe was an essential, prerequisite in the legislative mind, to the subscription.

In such cases, the doctrine in *The People* v. *Allen*, 6 Wend. 486; *People* v. *Peck*, 11 *id.* 604; *Merchant* v. *Langdon*, 6 Hill, 646; *Ex parte Heath*, 3 *id.* 42; *People* v. *Holley*, 12 Wend..481; and *Mead* v. *Gale*, 2 Denio, 232, does not apply. The act here, is not directory to the sheriff, but immediate notice is a condition precedent. In case it be not given, the sheriff is to give such notice for an election at another time. It was thus wisely provided, that the majority of the people of *Ripley* county might not be saddled with a debt, without their knowledge, and against their will.

The reason for holding the notice imperative, becomes more conclusive when it is insisted, on the part of the railroad company, that, because no citizen of *Ripley* county appealed from the action of the board, had in pursuance of the election, therefore, the county itself, and every citizen thereof, is estopped from questioning the proceedings collaterally. Thus it is claimed that an insufficient notice

May Term, 1857.

THE STATE
v.
THE BOARD
OF COMM'RS
OF RIPLEY
COUNTY.

May Term,
1857.

THE STATE
v.
THE BOARD
OF COMM'RS
OF RIPLEY
COUNTY.

and an election under it, was conclusive on persons who, we must presume, never heard of the proceedings. If the action of the board is to be regarded as a judicial proceeding which should have been appealed from, then the record of this inferior tribunal should show that the persons to be affected by these proceedings were in Court. It is not easy to distinguish this case from that of *The Thames Manufacturing Company* v. *Lathrop*, 7 Conn. R. 555. The statute required an abstract of the assessment lists to be returned on or before *December* 1, in each year. And the question was whether an assessment, the abstract of which was returned after that day, was valid. The Court held the provision imperative, because otherwise tax-payers aggrieved by the assessment might be deprived of their appeal to the board of relief. The Court say it was for the benefit of every citizen, that he might inspect the list, and, if he believed injustice done him, that he might appeal.

Hence, in the case at bar, the citizens of *Ripley* county must have the notice prescribed by the legislature, otherwise there was no election. In that event, the action of the county board was not binding on any citizen of the county, even had stock been subscribed, because the people were not notified as the statute required. They could not be deemed to be in Court, nor bound to appear there. Hence the proceedings of the board were wholly unauthorized and void.

Had the notice been given, the election held, and the stock subscribed, in pursuance of the act of 1849, then the question of the constitutional power of the legislature thus to deal with the property of the citizen would still remain.

But it is urged that the commissioners waived that irregularity by acting upon the election held. It was not in their power to waive it. Upon the hypothesis just suggested, the people of *Ripley* county had not determined anything on the subject, and, of course, there was nothing which the commissioners could legally do in the premises. They could not carry out what had not been begun, nor perfect what the people had never been properly called upon to initiate. If there was no notice, or an insufficient

May Term,
1857.

THE STATE
v.
THE BOARD
OF COMM'RS
OF RIPLEY
COUNTY.

one, there could be no election; and no power was conferred on the commissioners to act.

In this connection, it may be well to dispatch another position briefly. There are certain allegations looking to the performance of the conditions precedent prescribed by the order of the board of *September*, 1849. That position is untenable for two reasons—1. Because the board of commissioners had no power to take stock, either with or without condition, unless expressly authorized by law. And, 2. Because the performance alleged falls, as will be seen by comparing the two, far short of the conditions required.

As some of the Court, however, think that the notice given was, under the circumstances sufficient, and the election under it good—fully authorizing the commissioners to subscribe stock—the next question is, did the acts of the commissioners amount to a subscription of stock?

We have seen what these acts were. The order is, that upon certain conditions they will take 50,000 dollars—otherwise they will not. They appoint agents to represent that stock in the meetings of the stockholders of the railroad company. These are their acts. There is no order *in præsenti* of subscription on their record; no appointment of an agent or attorney to subscribe for them; no subscription of any kind on the books of the company. It is thus impliedly conceded that the subscription might have been made in different ways; but that no actual subscription was made in any way. It is too clear for argument, that their promise to subscribe upon certain conditions, was not itself a subscription.

Then the only remaining question is, was a subscription in some way required by the law? or might the obligation be inferred from their acts?

Section 12 of the act of 1848 runs thus: "It shall be lawful for the county commissioners, &c., for and in behalf of the county, to authorize by order on their records, so much of said stock to be taken in said railroad, as they may deem proper," &c. This the commissioners may do of their own motion, at any time within five years after the

May Term,
1857.

THE STATE
v.
THE BOARD
OF COMM'RS
OF RIPLEY
COUNTY.

books are opened. The proviso goes further, and makes it "their duty to subscribe stock," if a majority of the legal voters, at any annual election, so determine. So the act of 1849 (sec. 2) imposes the same duty to "subscribe to said stock."

Here, then, a subscription is essential, and one mode of subscribing is distinctly pointed out, namely, by an order on their record. This has not been done. The county is in no condition to compel the company to issue certificates of stock; nor can she be called upon to issue her bonds.

We have purposely omitted to say anything about the power of the legislature, under the old constitution, to thus invest the property of a citizen against his will in railroad speculations. Nor have we deemed it necessary to notice the new constitution, as neither was referred to in the argument.

It is suggested, in consultation, that perhaps the action of the board, in meeting and agreeing to take stock, is final, and unless appealed from by some citizen of *Ripley* county, conclusive as to the liability. If so, however, it has a fatal application to the position of the railroad company. For when their application for the issuing of bonds was decided in the negative, the company did not appeal; and that negative decision of the board must be regarded as final. *Gaston* v. *The Board of Comm'rs*, 3 Ind. R. 497.

Were it even admitted that what was done by the commissioners was equivalent to a subscription, that does not preclude inquiry collaterally as to their power, unless it was a judicial act, within their jurisdiction. It becomes important to determine whether it was a judicial act. Clearly not. It was a mere ministerial act. A judicial act is a free and independent determination of questions upon principles of law and public policy. How was it here? Had the board of commissioners the power, as a judicial body, to subscribe or not, as they thought proper? Under the first clause of the charter, they might exercise their discretion in that behalf. That had some semblance of judicial action, had the subscription been made. But how was it in the other alternative provisions? If the law

of 1849 was worth the paper it was printed upon, and the requisite preliminaries were observed in conducting the *March* election, the commissioners had no option. The election operated as a command. Obedience became an imperative duty. The board of commissioners was stripped of every element of judicial power. They were bereft of all discretion, option, reason, judgment, or deliberation in the matter. In that event the board became the mere organ—the agent to execute the behest of the people—the act of subscribing, a mere ministerial duty, about which the board exercised no judgment or consideration whatever.

As such, there is nothing sacred, final, or conclusive about it. The whole process is open to inquiry, directly or collaterally, like any other ministerial act. The best face that can be put upon it is, that it was the execution of a statutory power—which, to be valid and binding, must be executed in strict accordance with the terms of the grant. If the notice has not been given, or the election has not been held in accordance with the statute, then nothing has been done—nothing can be done, by the ministerial agent. That agent has not been authorized to act, and if it does act, it is a nullity. Here, there are no judicial blunders and absurdities to be smoothed over by presumption. The only question is, what has been done? Has the proper notice been given? If not, there could be no legal action. If it has, then the question as to the effect of the new constitution intervenes.

Whether, even waiving every other point, the company should not have tendered to the county the proper certificates of stock before they could demand the issue of bonds, is a point, though not made here, yet worthy of consideration.

If the company are not in a situation to issue such stock under the limitations of their charter, that also might be fatal to their application for a mandamus.

On the main question, for the several reasons suggested, I am of opinion that the judgment below, refusing a mandate, is correct, and should be affirmed.

<div style="text-align: right">

May Term,
1857.

THE STATE
v.
THE BOARD
OF COMM'RS
OF RIPLEY
COUNTY.

</div>

May Term, 1857.

*W. S. Holman*, for the state (2).

*P. L. Spooner* and *J. Ryman*, for the appellees.